United States District Court
District of Massachusetts

```
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
         v.                   )
                              )    Criminal No.
Allen Thrower,                )    08-10292-NMG
                              )
         Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

On July 21, 2010, after an eight day jury trial, defendant Allen Thrower ("Thrower") was convicted of nine counts of wire fraud under 18 U.S.C. § 1343 and aiding and abetting under 18 U.S.C. § 2 (Counts 1-9), as well as one count of conspiracy to defraud the United States under 18 U.S.C. § 371 (Count 10). He has moved for both a judgment of acquittal and a new trial.

**I.   Background**

While employed by the U.S. Army, Thrower used his official position to engage in a scheme with his sister, Marie Cimino ("Cimino"), to award contracts worth over $4 million to his sister's company, Military Service Support ("MSS"), representing that the company was experienced, even though it had no employees and had never entered into any contracts, and hiding their personal relationship.

**II.   Analysis**

   **A. Motion for Acquittal**

      **1.   Legal Standard**

Under Fed. R. Crim. P. 29(c), "the court may set aside the verdict and enter an acquittal."[1]  The Court "must consider the evidence as a whole taken in the light most favorable to the Government" and decide whether a rational jury could have found guilt beyond a reasonable doubt.  United States v. Smith, 680 F.2d 255, 259 (1st Cir. 1982).

      **2.   Application**

The defendant's argument that the government failed to adduce sufficient evidence to prove beyond a reasonable doubt that he committed the offenses for which he was convicted is unconvincing.  That is because the trial evidence showed that the defendant used his official government position to help his sister's company obtain profitable government contracts and that he committed intentional fraudulent conduct.

      **a.   Counts of Conviction**

To prove wire fraud in violation of 18 U.S.C. § 1343 (Counts 1-9), the government must demonstrate beyond a reasonable doubt that the defendant knowingly and willfully participated in a scheme to obtain money or property by means of false pretenses

---

[1] The defendant cites Fed. R. Crim. P. 29(a), which only applies to a motion for acquittal made before submission to the jury.

with the intent to defraud where the scheme involved the concealment of a material fact and interstate wire communication was used in furtherance of the scheme. <u>First Circuit Pattern Criminal Jury Instructions</u> (2010) § 4.18.1341. The target government entity need not suffer a financial loss as a result of the fraud. See <u>United States</u> v. <u>Leahy</u>, 464 F.3d 773, 786-87 (7th Cir. 2006).

To prove that the defendant engaged in a conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 10), the government must prove that the defendant entered into an agreement willfully to impair, impede and defeat a lawful function of the government, aiming to achieve that objective through the use of dishonest means and that an overt act was committed in furtherance of the agreement. <u>First Circuit Pattern Criminal Jury Instructions</u> (2010) § 4.18.1341; <u>United States</u> v. <u>Barker Steel Co.</u>, 985 F.2d 1123, 1128 (1st Cir. 1993). The government need not suffer pecuniary loss as a result of the fraud nor must the unlawful act or purpose be criminalized under another statute. See <u>Barker</u>, 985 F.2d at 1131.

### b.  **Trial Evidence**

A rational trier of fact could easily find that Thrower was aware of federal ethical rules prohibiting his conduct. Thrower knew it was a violation of federal ethics regulations for him to participate in the contracting process without disclosing his

personal relationship with his sister's company. The defendant had saved an email on his computer regarding ethics training and had even taught ethics training to employees.

The trial evidence also showed that the defendant made material, false statements. Thrower knew that MSS had no employees and no previous experience, yet he told the officers responsible for awarding some of the contracts (Edson Harrington and Sabra Boynton) that MSS was experienced and highly recommended. The officers testified that if they had known the truth, they would not have awarded the contracts.

The evidence further proved Thrower's intent to deceive, as well as his participation in a scheme with the intent to defraud and conspiracy to defraud the government. Thrower engaged in additional fraudulent conduct to help his sister's company, even pretending to be a fictional MSS manager during a telephone interview with a job applicant.

Finally, the evidence allowed the jury to consider the defendant's motive to lie about and conceal his relationship with his sister. The defendant knew the profit margin of his sister's company's would be substantial. The jury was entitled to conclude, based on check cashing activity from the MSS bank account, that a portion of that profit was conveyed to Thrower for airfare, gambling and a car. The defendant's bank statements did not account for any of that cash.

In sum, a rational jury could have (and a jury did) find the defendant's guilt beyond a reasonable doubt on all counts.

**B.   Motion for New Trial**

   **1.   Legal Standard**

The Court's power to order a new trial is greater than its power to grant a motion for acquittal. United States v. Ruiz, 105 F.3d 1492, 1501 (1st Cir. 1997). The Court may vacate any judgment and grant a new trial "if the interests of justice so require." Fed. R. Crim. P. 33(a). The remedy of a new trial is used "only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict." United States v. Merlino, 592 F.3d 22, 32 (1st Cir. 2010). The Court may weigh the evidence and evaluate the credibility of witnesses but should defer to the jury's credibility assessment absent "exceptional circumstances." Id. at 32-33.

Under the cumulative error doctrine, "individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect." United States v. Sepulveda, 15 F.3d 1161, 1195-96 (1st Cir. 1993). Cumulative error analysis is inappropriate when the defendant complains of the cumulative effect of non-errors. United States v. Stokes, 124 F.3d 39, 43 (1st Cir. 1997).

   **2.   Application**

The defendant alleges five errors and contends that any

error or the cumulative effect of a combination of errors warrants a new trial: 1) the admission of a summary chart of check cashing habits, 2) allowing Special Agent Hegarty to opine that the check cashing habits constituted structuring, 3) withholding critical evidence until shortly before trial, 4) requiring Thrower to sit at counsel table over his objection and 5) a verdict contrary to the weight of the evidence.

First, it was not error to permit the government to admit a summary chart of the check cashing habits of Anthony Cimino, the husband of Thrower's sister. The summary chart at trial met all of the requirements Fed. R. Evid. 1006 and was properly admitted into evidence. Having presented the defendant with the records upon which the chart was based and agreeing that their production was not required at trial, the government did not have to produce the underlying records into evidence. See United States v. Milkiewicz, 470 F.3d 390, 398 (1st Cir. 2006).

In addition, a proper foundation was laid through the testimony of Special Agent Patrick Hegarty, who reviewed the records and created the chart. See United States v. Behrens, 689 F.2d 154, 161 (10th Cir. 1982). The chart was relevant to the success of the defendant's scheme and probative of the defendant's knowledge of the profits of his sister's company. It was probative and permitted the jury to draw inferences about the defendant's knowledge and motives.

Second, it was not error to admit Special Agent Hegarty's lay opinion testimony based on his observation of Anthony Cimino's banking transactions and his own knowledge about currency transaction reporting requirements. See Fed. R. Evid. 701; United States v. Paiva, 892 F.2d 148, 156 (1st Cir. 1989) (applying abuse of discretion standard).  Furthermore, even if it had been error, it was harmless because the jury was able to discern the activity from the summary chart itself which showed $9,000 checks being cashed repeatedly.  That was done in an obvious effort to avoid the $10,000 reporting requirement under 31 U.S.C. § 5324.

Third, it was not error for the Court to admit into evidence at trial three emails as Exhibits 222, 223 and 224 which showed that Thrower selected his sister's company for a contract and that he reminded his own staff to attend ethics training. The defendant failed to object to the admission of evidence and so failed to preserve the issue.  See United States v. Meserve, 271 F.3d 314, 324 (1st Cir. 2001).  Even if the defendant were not raising the issue for the first time here, the three emails in question were on defendant's own hard drive which the government provided to him in automatic discovery.  Furthermore, the government turned over an additional copy of the three emails in printed form prior to the testimony of Edson Harrington, thereby undermining the defendant's claim that he would have

cross-examined Harrington differently.

Fourth, it was not error to require the defendant to sit at counsel table during the trial. Seating during trial is within the discretion of the trial court. United States v. Turkette, 656 F.2d 5, 10 (1st Cir. 1981). Indeed, a contention that a court-ordered seating arrangement was prejudicial "borders on the frivolous." Id. at 9.

Finally, the defendant's reiteration of his argument in support of his motion for acquittal fails here for the same reasons. Moreover, because none of the five alleged errors was, in fact, an error, there is no cumulative effect to consider.

**ORDER**

In accordance with the foregoing, defendant's Motions for Acquittal (Docket No. 92) and New Trial (Docket No. 93) are both **DENIED**.

**So ordered.**

    /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 8, 2010